UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARTHUR LEE PRICE,

         Plaintiff,

    v.

EAGLE, INC., ET AL

         Defendants.

CASE NO.:

SECTION:

DEFENDANT, RUST ENGINEERING & CONSTRUCTION, INC.'S
NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442

    **NOW INTO COURT**, through undersigned counsel, comes defendant, Rust Engineering & Construction, Inc. ('Rust") who, under 28 U.S.C. §§ 1441, 1442, and 1446, notices the removal of the above-entitled action bearing No. 2021-09717, Division "D" Section "12", on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana (hereinafter, the "State Case"), to the United States District Court for the Eastern District of Louisiana.  This Court has subject matter jurisdiction under 28 U.S.C. § 1441 in that the action arises "under the Constitution, laws or treaties of the United States" within the meaning of that statute, and because Rust was, at all material times, acting under an officer of the United States as outlined in 28 U.S.C. § 1442.

    Rust respectfully represents the following under the requirement of 28 U.S.C. §1446(a) for a "short and plain statement of the grounds for removal."

**Background and Applicable Procedural Requirements**

1.

    Venue of the removed action is proper in this Court as it is the district court for the district where the State Case is pending, under 28 U.S.C. § 1441(a).

1

2.

Plaintiff, Arthur Lee Price (hereinafter "Plaintiff" or "Mr. Price") filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana, on December 2, 2021.[1] Plaintiff named Rust Engineering & Construction, Inc. as a defendant in his Petition for Damages.[2] Plaintiff alleges he contracted pleural plaques, asbestosis and fear of cancer as a result, in part, of exposure to asbestos while working "at the Michoud facility in Orleans Parish, among other facilities, from 1964-1965 while spaying asbestos containing insulation while working for Space Fire Proofing."[3] Plaintiff further alleges "Rust Engineering and its predecessor were the general contractor for this work...".[4]

3.

Rust was served with citation and the Petition for Damages on December 17, 2021. A copy of all processes, pleadings, and orders served upon Rust and entered in the state action is attached hereto as Exhibit "2" in accordance with U.S.C. §1446(b).

4.

This Notice of Removal is filed within 30 days of December 17, 2021. Defendant files this Notice of Removal within the time prescribed by law. *See,* 28 U.S.C. §1446(b).

5.

Plaintiff's petition placed Rust on notice that his alleged asbestos exposure related, in part, to his exposure to asbestos-containing materials being maintained for The National Aeronautics and Space Administration (hereinafter "NASA") - an independent agency of the U.S. Federal

---

[1] *See,* Plaintiff's Original Petition for Damages, attached hereto as Exhibit "1".

[2] *Id.*

[3] See, Exhibit "1" at Paragraphs 11 and 16.

[4] *Id,* at Paragraph 11.

Government.  The Michoud Facility acts as a manufacturing facility providing vital support to NASA exploration and discovery missions.  During the timeframe alleged by Plaintiff, the facility was being maintained by Rust under detailed supervision and control of one or more officers of the United States at the Michoud Facility.  Therefore, Plaintiff claims that he was injured due to asbestos-containing products allegedly at NASA under Rust contracts with the U.S. Federal Government.

6.

Plaintiff alleges negligence, intentional concealment and fraud, and failure to warn claims against Rust based on Mr. Price's alleged exposure to asbestos.[5]

7.

Before February 24, 2020, binding Fifth Circuit precedent interpreting 28 U.S.C. § 1442(a)(1) to include a "causal nexus" test, precluded the successful removal of negligence-only asbestos claims brought against a defendant.  *See*, *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 399 (5th Cir. 2018); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016); *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169, 174 (5th Cir. 2015).

8.

On February 24, 2020, the Fifth Circuit issued an en banc opinion in *Latiolais v. Huntington Ingalls, Inc.*, overruling *Bartel*, *Savoie*, and *Legendre*— "to the extent that those cases erroneously relied on a 'causal nexus' test"—holding that negligence claims against the defendant were now removable under section 1442(a).  *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (Further stating that a civil action *relating to* an act under color of federal office may be removed - if the other statutory requirements are met).  *Id* at 292.

---

[5] *See,* Exhibit "1" at ¶ 11, 15.

3

# I.   FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. § 1442 (A)(1)

9.

Rust is therefore entitled to a federal forum under the federal officer removal provisions of 28 U.S.C. § 1442(a)(1), on the basis that Rust was under the direction and control of the United States Government for the acts alleged by Mr. Price in his Petition.

10.

This statute allows the removal of a state-court action "against or directed to…any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office…" 28 U.S.C. §1442(a).

11.

There is no presumption against removal jurisdiction under the Federal Office Removal Statute, unlike the general removal statute. *See, Savoie v. Huntington Ingalls, Inc*., 817 F. 3d 457, 462 (5th Cir. 2016).

12.

To remove a state law claim under this statute, as a federal officer, or "person"[6] acting under him, the removing party must show: (1) it has asserted a colorable federal defense; (2) it is a "person" within the meaning of the statute; (3) it has acted pursuant to a federal officer's directions; and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286, 296 (5th Cir.2020).

---

[6] The term "person" applies to both individuals and corporate entities. *See, Bartel v. Alcoa S.S. Co., Inc.,* 805 F. 3d 169, 172 (5th Cir. 2015). Therefore, Rust is a "person" under the Federal Officer Removal Statue.

4

**A.      Rust Acted Under the Direction of a Federal Officer**

13.

Congress enacted the "National Aeronautics and Space Act of 1958" ("the Act"), which created NASA.[7]  The Act gave the United States president authority to appoint an administrator (federal officer) to plan, direct, and conduct aeronautical space activities.   The Act, and as amended, specifies duties and authorizes activities that include contracting with outside vendors/contractors to perform activities that would otherwise be performed by NASA employees and officers.  Maintaining a NASA facility is uniquely of federal interest.[8]

14.

The United States government acquired the land where the Michoud Facility is located by condemnation between 1951-1952.  *United States v. Michoud Indus.  Facilities*, 322 F. 2d, 698, 703 (5th Cir. 1963).  In the early 1960's, the property was transferred by the federal government to the National Aeronautics and Space Administration (NASA) to maintain the federal government's national space program.  *Wood v. Am. Crescent Elevator Corp.,* CIV.A. 11-397, 2011 WL 1870218 (E.D. La. May 16, 2011).   In the performance of its functions, NASA is authorized "to enter into and perform such contracts, leases, cooperative agreements, or other transactions as may be necessary in the conduct of its work and on such terms as it may deem appropriate, with any agency or instrumentality of the United States, or with any State, territory, or possession, or with any political subdivision thereof, or with any person, firm, association, corporation, or educational institution."  51 U.S.C.A. § 20113 (e) (West).

---

[7] *See,* Pub. L. No. 85-568, 72 Stat. 426 (Jul 29, 1958).

[8] *See,* the Act.

15.

Mason-Rust, Inc.[9] entered into a written contract with the United States Government (National Aeronautics and Space Administration) to perform "Support Services" in connection with the construction of certain facilities at NASA's Michoud, Louisiana, plant beginning on December 19, 1961.[10],[11] The Contract encompassed performance of transportation, security, fire protection, photography, supply, food, medical, communications, mail, messenger, machine maintenance, custodial, reproduction, refuse, engineering, plant operation, and plant maintenance.[12] While Rust was carrying out the original Contract, they were awarded the management function of a supervising construction contract.[13] Rust was under contract with the United States Government until about or around 1975.[14] During the applicable years, Rust's use of any asbestos-containing materials would have been done in accordance with the Contract and under the direction of NASA's requirements and regulations.[15]

16.

Rust was "acting under" an "officer ... of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when they maintained the Michoud Facility for NASA because the United States government contracted with Rust to perform a task that the federal government

---

[9] Rust Engineering & Construction, Inc., and a corporate entity by the name of Mason & Hanger formed a joint-venture named Mason-Rust. Hereinafter, "Rust" and "Mason-Rust" may be used interchangeably.

[10] *See*, excerpts of the 1965 NASA Authorization, Hearings Before the Committee on Science and Astronautics, U.S. House of Representatives, Eighty-eighth Congress, Second Session, on H. R. 9641, (superseded by H. R. 10456), attached hereto as Exhibit "3", at p. 94.

[11] *See,* History of Michoud Contracts, attached hereto as Exhibit "4".

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *See*, Part 1 of the Mason-Rust Contract, attached hereto as "5A". The complete contract is attached hereto as Exhibits "5A" through "5G". The contract has been separated into parts so as to reduce the file size of the documents under 35Mb, per the instruction of the clerk's office.

otherwise would itself have had to perform—namely, to maintain the facility used to help space exploration and to further other national interests.[16]  A determination was made when selecting Rust as a contractor that the Corps of Engineers did not have in-house capabilities for the Contract's purpose within the required time schedule – the timing was a major factor in completing the required projects in order to interface these requirements with production schedules.[17]

17.

Rust's contracts at the Michoud Facility consisted primarily of maintenance and supervising construction.  Rust acted in strict compliance with NASA specifications, all of which were reviewed and required approval by NASA personnel.[18]  NASA was intimately involved in the design, maintenance plan, and layout of the facility and its materials.  Dr. George N. Constan, manager of the Michoud Facility, had Rust under his direct control.[19]  Additionally, NASA monitored Rust's performance under the Contract and required Rust to maintain the facility following the "Manual of Standard Practice for Construction Management" that was approved by the contracting officer for the Rust contract.[20]  To the extent that any part of the facility contained any asbestos, this material and all other materials were explicitly and directly required by the government under the direction of NASA.[21]

---

[16] See, e.g. Winters v. Diamon Shamrock Chemical Co., 149 F.3d 387.

[17] See, Exhibit "3", at p. 94.

[18] See, Exhibit "5A" at pp. MR-00006-08 (Article I).

[19] See, Exhibit "3", at p. 808. (Excerpt of statement made by Robert B. Young, Director, Industrial Operations, Marshall Space Flight Center, National Aeronautics and Space Administration, see p. 805).

[20] Id., at 934.

[21] See, Exhibit "5A".

18.

Pursuant to the Contract, including all applicable task/work orders and all written and verbal amendments, NASA provided reasonably precise specifications regarding the installation, inspection, and maintenance of the Michoud Facility.   The following are examples of specifications contained in the Contract:

- The Contractor shall at all reasonable times keep at the site of work a duly authorized representative who shall receive and execute, on behalf of the Contractor, such notices, directions, and instructions as the Contracting Officer may issue under the terms of the Contract.[22]

- In accomplishing the foregoing, the Contractor shall, under the direction or approval of the Contracting Officer, apply sound business methods to the performance of the services and in accordance with standards acceptable to the Contracting Officer.[23]

- The Contractor shall furnish information and advice to the Contracting Officer with respect to the functional adequacy and capability of the facilities and components thereof, including future plans and design or modifications.[24]

- The Contractor shall be furnished by the Government, without charge therefor, the following:

  - 2. Other items may be specified in the Appendixes.
    - The right is reserved by the Government, at its sole option, to furnish any supplies, materials, and/or equipment deemed necessary to either facilitate contact performance or lessen the cost thereof.  The Contractor shall obtain the approval of the Contracting Officer prior to procuring, leasing, or renting any equipment of any kind or type.   The Contracting Officer reserves the right to direct, in all cases, the method by which any equipment shall be provided, i.ie purchased, leased, or rented.[25]

- Inspection and acceptance of work performed hereunder shall be accomplished at the site by the Contracting Officer or his duly authorized representative.[26]

---

[22] *See*, Exhibit "5A" at p. MR-00012 (Article XVI)

[23] *Id*, at pp. MR-00006-08 (Article I).

[24] *Id.*, at pp. MR-00006-08 (Article I).

[25] *Id.*, at p. MR-00008 (Article III).

[26] *Id.*, at p. MR-00010 (Article IX).

- The Contractor shall present, for the prior approval of the Contracting Officer, the initial on-site personnel staffing plan.  The plan shall outline the number of personnel, types of personnel, areas of intended utilization, and other pertinent factors.  Such prior approval shall also be required for any subsequent increases or decease as work progresses.[27]

19.

NASA had complete access to Rust's operations at the Michoud Facility and exercised oversight of the facility's design, development, and maintenance.  NASA inspected materials, the quality, and the facility's maintenance process through daily, weekly, and monthly operation and expenditure reports.[28]

20.

The specifications required Rust to use government-specified and approved materials, components, processes and/or techniques developed and approved by the government.  At no time were there any materials used or incorporated into the facility that were not specifically mandated or approved by the government.[29]

**B.     The Charged Conduct is Connected or Associated with an act Pursuant to a Federal Officer's Directions.**

21.

Plaintiff's claims against Rust are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction.  *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir.2020).

---

[27] *See*, Exhibit "5A" at p. MR-00011 (Article XII).

[28] *Id.*, at p. MR-00008 (Article IV).

[29] *See*, Exhibit "5A"

22.

During the period of plaintiff's alleged asbestos exposure, the facility was maintained by Rust according to contracts executed between Rust (on the one hand) and the United States government (on the other hand) and constituted a substantial amount of the construction work performed by Rust requiring the potential disturbance or use of asbestos-containing materials. Rust's actions relate to acts under the color of NASA's officers and Mr. Price's alleged exposure to asbestos because (l) his alleged exposure purportedly occurred while spaying asbestos-containing insulation while working for Space Fire Proofing at the Michoud Facility, (2) he alleged this work occurred while Mason Rust was the general contractor, and (3) while they were acting under the direction of a federal officer or agency.

In fact, since federal officers directed and required Rust to use specific materials and maintain all components and materials of which the facility was comprised, one such material which was purportedly the asbestos to which Mr. Price was allegedly exposed, there is an unequivocal relationship between the direction Rust received from NASA, which Rust followed, and plaintiff's alleged injury.

**C.      Rust Possesses a "Colorable" Federal Defense.**

23.

Rust raises a colorable federal defense to one or more of Petitioner's claims in this action. First, the jurisprudential doctrine of government contractor immunity established by *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), and its progeny bars one or more of the Plaintiff's claims. *Boyle* exempts federal contractors from design or other defects if "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the

equipment known to the supplier but not to the United States." Furthermore, Petitioner's negligence claims relate to the acts performed under color of federal office.

24.

The "Boyle" defense shields contractors from liability from tort liability actions, such as here, alleging that plaintiff sustained injuries stemming from defective products or equipment manufactured or supplied as required by a government contract. See *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). The Fifth Circuit has consistently recognized this defense. See, e.g., *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001); *Trevino v. General Dynamics*, 865 F.2d 1474, 1479 (5th Cir. 1989). See also *Bynum v. FMC Corp.*, 770 F.2d 556, 564 (5th Cir. 1985) (citing *Myers v. United States*, 323 F.2d 580 (9th Cir. 1963); *Hix v. United States Army Corps of Engineers*, 155 Fed. Appx. 121, 127 n.6 (5th Cir. 2005).

25.

The government contractor defense is satisfied here. The reasonably precise design specifications established by NASA mandated installing asbestos and asbestos-containing products at the Michoud Facility. The building conformed to the specifications mandated by NASA—the specifications mandated the use of asbestos, and Rust maintained the building using asbestos. The United States government had knowledge of the potential hazards of asbestos-containing materials in the workplace that was equal to or superior to that of Rust.

26.

Secondly, Rust is entitled to federal officer removal under 28 U.S.C. § 1442(A)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in *Yearsley v. W. A. Ross Construction C0.*, 309 U.S. 18 (1940). *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is

11

immune from suit based upon performance of the Contract. The *Yearsley* doctrine is satisfied here, because the acts complained of were performed at the direction of government officers acting pursuant to government authorization, and if the government had performed these acts directly, it would be immune from suit. "Contract employees play an important role in NASA's mission, and their duties are functionally equivalent to those performed by civil servants." *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 139; 131 S. Ct. 746, 751–52; 178 L.Ed.2d 667 (2011).

27.

Therefore, Rust is entitled to immunity under the well-established "*Boyle*" and "*Yearsley*" defenses. This is the scenario that §1442 removal provisions were designed to address. *See, e.g. Winters v. Diamon Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998) ("[T]he Supreme Court has noted that one of the most important functions of this right of removal [under § 1442] is to allow a federal court to determine the validity of an asserted official immunity defense.") (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

28.

Removal under 28 U.S.C. § 1442 does not require the consent of any defendant. See *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian*, 477 F. Supp. 610 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983).

29.

Because this Court has federal officer jurisdiction over at least one claim asserted by the Petitioners, it has supplemental jurisdiction over all the Petitioners' claims. 28 U.S.C. § 1367(a).

30.

With this Notice, Rust is filing a "copy of all process, pleadings, and orders served upon" it in the State Case.  28 U.S.C. §§ 1446(a), (d).  Also, written notice is being given to all adverse parties, and a copy of this Notice is being filed with the Clerk of the Civil District Court for the Parish of Orleans, State of Louisiana[30].

31.

Rust reserves the right to submit further affidavits and exhibits in support of removal, if necessary.

**WHEREFORE**, Rust is hereby giving notice that the proceeding bearing number 2021-09717 in the Civil District Court for the Parish of Orleans, State of Louisiana, is removed therefrom to the docket of this Honorable Court for trial and determination as provided by law and asks that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case and to proceed with this civil action as a matter properly removed.

Respectfully submitted,

**SULZER & WILLIAMS, L.L.C.**

RICHARD P. SULZER, La Bar # 21150
rsulzer@sulzerandwilliams.com
ROBERT E. WILLIAMS, IV, La Bar # 19217
rwilliams@sulzerandwilliams.com
ALBERT I. ADAMS, JR. La. Bar #37007
aadams@sulzerandwilliams.com
201 Holiday Boulevard, Suite 335
Covington, Louisiana 70433
Telephone: (985) 898-0608
Facsimile:  (985) 898-0871
*Attorneys for defendant, Rust Engineering &
Construction, Inc.*

---

[30] *See*, Notice of Filing Notice of Removal, attached hereto as Exhibit "6"

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this **14th** day of **January**, 2022, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

_____
**ROBERT E. WILLIAMS, IV**