# EXHIBIT 1

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2021 - 09717   SECTION 12

ARTHUR LEE PRICE

VERSUS

EAGLE, INC., ET AL

FILED: _____     _____
                                    DEPUTY CLERK

## PETITION FOR DAMAGES

Now into Court, through undersigned counsel, comes the petitioner, Arthur Lee Price, (hereinafter referred to as the Plaintiff), an adult resident of the State of Louisiana, Parish of St. Tammany, who files this his Petition for Damages:

1. Plaintiff's exposure to Defendants' asbestos-containing products while working as a Jones Act seaman pursuant to 46 U.S.C.A. § 30104, in this Parish as described below is a proximate cause of his injuries as defined by the Jones Act.

2. The damages sought by Plaintiff, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

3. Made Defendants are all foreign corporations licensed to do and doing business in the state of Louisiana that are liable to the Plaintiff for the Jones Act claims pursuant to 46 U.S.C.A. § 30104 asserted herein. Made defendants herein are the following, either foreign operations licensed to do and business in the State of Louisiana or domestic corporations licensed to do and doing business in the State of Louisiana, or are individuals that are liable unto the Petition (also referred to as Plaintiff), for the claims asserted herein:

### ASBESTOS MINER, MANUFACTURER, SELLER, SUPPLIER, DISTRIBUTOR, EQUIPMENT and CONTRACTOR DEFENDANTS;

1. ConocoPhillips Company, f/k/a Phillips Petroleum Company, as successor-by merger to Drilling Specialties Company.
2. Taylor Seidenbach, Inc.
3. Eagle, Inc.
4. Union Carbide Corporation
5. Montello, Inc.
6. Rust Engineering & Construction, Inc.
7. Sentry Insurance Company as Insurer of Reilly Benton
8. Foster Wheeler Energy Corporation
9. Uniroyal

**EMPLOYERS, PREMISE and VESSEL OWNER, VESSEL OPERATOR and VESSEL CHARTER DEFENDANTS;**

10. Shell Oil, Company
11. Diamond Offshore Drilling, Inc., Individually and as successor-in-interest to Odeco Drilling, Inc., Zapata Offshore Company and Diamond M Drilling Co
12. Murphy Oil, USA, Inc. as successor in interest to ODECO
13. HRG Group as successor in interest to Zapapta Corporation
14. Entergy New Orleans, LLC

## SUBJECT MATTER JURISDICTION AND GOVERNING LAW

4. This Court has jurisdiction over this cause of action, which occurred principally in the State of Louisiana, in and on navigable waters of Louisiana. Specifically, Petitioner Arthur Price, at all times relevant, was a seaman who spent more than 30 percent of his time in the service of a vessel in navigation. Petitioner sailed and served aboard barges operated by his Employers, Shell Oil, Co. Fred Wilson Drilling Company and Diamond Offshore Drilling (f/k/a and s/s/i ODECO)., and owned by various Shipowners, which barges utilized and carried asbestos and asbestos containing products and other hazardous products to which Petitioner was exposed to the detriment of his health. This action is filed pursuant to the Jones Act, 46 USC § 30104, et seq., and also includes actions for unseaworthiness and product liability under the General Admiralty and Maritime Law, Louisiana State Law as a supplement to the forgoing, and Louisiana State Law for those Defendants that are indebted to Petitioner but are wholly unconnected to Maritime Jurisdiction. Petitioner brings this action in State Court pursuant to the Saving to Suitors Clause, 28 U.S.C. 1333, et seq., and the Jones Act.

6. The Defendants are solidary obligors of Petitioner. The asbestos exposures that have caused harm to Petitioner were injurious in such a way that each exposure combined with the others to result in an indivisible harm, rendering each Defendant liable for the whole of Petitioner's injury.

## PERSONAL JURISDICTION AND VENUE

7. Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42(2) because Defendants Taylor-Seidenbach, Inc., and Eagle, Inc. are domestic corporations licensed to do business in this State and have designated as their primary business offices and/or primary place of business in Louisiana as Orleans Parish.

8. This action is within the jurisdiction of the court and Orleans Parish is a proper venue pursuant to Louisiana Code of Civil Procedure article 73 because each of the defendants listed

above contributed to Plaintiff's exposure to asbestos and subsequent contraction of asbestosis, pleural plaques and fear of cancer and therefore each is solidarily liable to Plaintiff with each of its co-defendants, and defendants Taylor-Seidenbach, Inc. and Eagle, Inc., domiciled in Orleans Parish.

9. This action is within the jurisdiction of the court and Orleans Parish is a proper venue pursuant to Louisiana Code of Civil Procedure Article 74 because wrongful conduct occurred, and resultant damages were sustained within Orleans Parish.

## BACKGROUND

10. Petitioner has been diagnosed with asbestosis, pleural plaques and fear of cancer due to his exposures to asbestos, which exposures he suffered while working as a laborer, driller and welder for and on barges owned by Shell Oil, Co., from approximately 1968 to 1984 and ODECO from 1966-1968. During this time, Petitioner Arthur Price was required by his employer to perform duties which included the constant exposure to asbestos friable fibers causing him to breathe into his system carcinogenic asbestos dust resulting in harm to him, including his development of asbestosis, pleural plaques and fear of cancer. These events of harm occurred constantly and while in Louisiana waters and ports-of-call. Petitioner spent the majority of his time contributing to the service of barges located in the intra-coastal waterways of Louisiana, Lake Pontchartrain and frequently came ashore in Orleans Parish, including on various vessels including but not limited to the Zapata Saratoga among others.

11. Petitioner Arthur Price was exposed to dangerous and unlawful concentrations of asbestos in the ambient air due to his assigned work and/or in close proximity of said asbestos and asbestos-containing products. Harmful contamination to Mr. Price's person occurred due to the asbestos and asbestos-containing products found and/or utilized aboard the vessels upon which he sailed. Petitioner Arthur Price suffered exposure to asbestos and asbestos-containing products designed, manufactured, sold, supplied and/or maintained, used, owned or removed by the defendants, which exposure ultimately resulted in his contraction of malignant mesothelioma. During the course and scope of his employment during certain years, Petitioner used, handled, and/or was in the vicinity of others using or handling asbestos or asbestos-containing products at various locations, wherein dangerously high levels of asbestos fibers escaped into the ambient air of the work place, resulting in Petitioner breathing those fibers, subsequently causing the development of asbestosis, pleural

plaques and fear of cancer. Petitioner Arthur Price was. in fact injured as a result of his continued exposure to said products during the course of his career as a seaman.

In addition, Plaintiff worked at the Michoud facility in Orleans Parish, among other facilities, from 1964-1965 while spraying asbestos containing insulation while working for Space Fire Proofing. Rust Engineering and its predecessor were the general contractor for this work and never warned Mr. Price of the dangers associated with this work. Taylor Seidenbach and Eagle, Inc. both supplied asbestos containing material used by Art Price at his various jobs between 1963-1979.

12. The asbestos and asbestos-containing products found aboard the vessels upon which Petitioner Arthur Price sailed are known to be highly toxic to mankind, and the human body can be contaminated by asbestos and asbestos-containing products through inhalation and ingestion.

13. Before and during Arthur Price's exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products for use where the Petitioner himself was exposed to asbestos containing products, equipment, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

14. When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

15. Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to Petitioner, of the health hazards inherent in the asbestos containing products they were selling and/or using. Instead of warning Petitioner and the general public about these dangers, the defendants ignored or actively concealed such information, or condoned such concealment, in order to sell asbestos or asbestos-containing products and to avoid litigation by those who were injured from asbestos inhalation. Those defendants who have engaged in intentional misconduct, fraud or concealment or conspiracy to defraud or conceal the dangers of asbestos-containing products are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence or strict liability, identifies other forms

of specified misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

16. As a direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos as described in the preceding paragraphs, Petitioner Art Price contracted pleural plaques, asbestosis and fear of cancer caused from asbestos exposure. Art Price's asbestos diseases were diagnosed in or around March of 2021.

17. Because of the latency period between exposure to asbestos and the onset of asbestosis and fear of cancer, and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, Petitioner has only recently discovered his injuries and not more than one year preceding this filing of this Petition for Damages.

18. Plaintiff disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiff never worked aboard a vessel owned or operated by the United States government. Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

19. Plaintiff disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave, including but not limited to the Outer Continental Shelf. Specifically, Plaintiff does not allege nor will he claim that any asbestos exposure occurred on or arose from activities related to the Outer Continental Shelf.

## STRICT LIABILITY AND NEGLIGENCE ALLEGATIONS AGAINST MANUFACTURING AND EQUIPMENT DEFENDANTS

20. The Defendants CHEVRON PHILLIPS CHEMICAL COMPANY LP, as successor-in-interest to and f/k/a Drilling Specialties Company, CONOCOPHILLIPS COMPANY, f/k/a Phillips Petroleum Company, as successor-by-merger to Drilling Specialties Company, DRILLING SPECIALTIES COMPANY, LLC, as successor-in-interest to Drilling Specialties Company, PHILLIPS CHEMICAL HOLDINGS COMPANY f/k/a Drilling Specialties Company, MONTELLO, INC., and UNION CARBIDE CORPORATION were all miners, manufacturers, sellers, users, distributors and/or suppliers of asbestos products or equipment utilizing asbestos products internally and externally, and were engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products or equipment utilizing asbestos products

internally and externally, or representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos-containing products, which were expected to and did reach, including but not limited to, each of the vessels or facilities from which Petitioner Arthur Price was exposed.

21. The asbestos products and/or asbestos-containing equipment mined, manufactured, sold, distributed, supplied and/or used by these defendants were defective, unreasonably dangerous, and unreasonably dangerous per se, to Petitioner who was an intended and foreseeable user and bystander who was exposed to these asbestos products or asbestos-containing equipment. These defects include, without limitation, the following:

a. the mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b. the mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Petitioner who would be foreseeably exposed to them in as a result of their intended use;

c. lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d. lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e. failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f. failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

g. failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h. failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i. defects in the composition and construction of these products;

   j. failure to recall these products mined, manufactured, sold, distributed and/or supplied;

   k. failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

   1. overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants; and m. liability to Petitioner in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Code of Civil Procedure that have caused harm to Petitioner.

22  The defective conditions of defendants' products and asbestos-containing equipment and fault, as noted above, are a proximate cause of Petitioner's injuries complained of herein.

23.  Petitioner also alleges that each and every one of the foregoing defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Petitioner's injuries.

## STRICT LIABILITY AND NEGLIGENCE ALLEGATIONS AGAINST SELLER, DISTRIBUTOR, SUPPLIER, AND CONTRACTOR DEFENDANTS

24.  As to Eagle, Inc. and TAYLOR-SEIDENBACH, INC., Petitioner asserts causes of action in strict liability for the manufacture, sale and use/removal of unreasonably dangerous asbestos-containing products, thereby substantially contributing to Petitioner's asbestos exposure and resultant asbestosis and pleural plaques

25.  As to the Defendants listed in Paragraph 25, Petitioner asserts causes of action in negligence for the sale and supply of asbestos and asbestos-containing products and failure to warn, thereby substantially contributing to Petitioner's asbestos exposure and resultant malignant mesothelioma.

27.  As to the Defendants listed in Paragraph 24, Petitioner asserts causes of action in strict products liability as the commercial supplier of asbestos and asbestos-containing products, thereby substantially contributing to Petitioner's asbestos exposure and resultant malignant mesothelioma.

28.  As to the Defendants listed in Paragraph 24, Petitioner asserts causes of action in negligence for the lack of reasonable care in the handling, use, installation and removal of asbestos containing products in the vicinity of Petitioner and failure to warn, and strict garde liability for

damages caused by products within their care, custody, and control, thereby substantially contributing to Petitioner's asbestos exposure and resultant malignant mesothelioma.

29.  The Defendants listed in Paragraph 24 sold, installed, maintained or removed asbestos containing insulation and other asbestos-containing products to or at Petitioner's work sites during the Petitioner's exposure period from approximately 1963 through at least 1979. They knew or should have known they were selling unreasonably dangerous products and failed to warn about those dangers. In addition, these Defendants were and are liable as a "professional vendor" of asbestos-containing products. In addition, these Defendants are liable for "manufacturing" asbestos containing products, including gaskets, blankets and fittings, marinite/micarta "sandwich" boards, which they sold to, or used during insulation or other contract work performed at, Petitioner's work sites during the Petitioner's exposure period from approximately 1963 through at least 1979. Petitioner was exposed to said products. Said products were unreasonably dangerous per se, unreasonably dangerous in normal use, and dangerous in design or composition. In addition, said products were unreasonably dangerous because these Defendants failed to properly warn workers, including Petitioner, of those dangers. In addition, the owners and operators of Petitioner's work sites during the Petitioner's exposure period from approximately 1963 through at least 1979's contracted with one or more of these Defendants to perform insulation or other contracting work, involving the installation, removal, handling and/or manipulation of asbestos containing material Said insulation work had the direct result of releasing into the workplace atmosphere, within Petitioner's breathing zone, dangerous levels of asbestos dust and fibers. Consequently, Petitioner was exposed to, and inhaled, said asbestos dust and fibers, sustaining injury to his lungs, culminating in development of mesothelioma. These Defendants were negligent in failing to isolate their work activities involving asbestos, not warning bystanders regarding the dangers of inhaling asbestos dust, and not using proper administrative and engineering controls, such as proper ventilation and wet-down techniques, to minimize and/or eliminate asbestos exposure suffered by bystander employees, including Petitioner. In addition, these Defendants held out to the public, by their representations and packaging, including the use of boxes, cartons or bags bearing the name or logo of their company, that they were the manufacturers of the asbestos-containing products which they sold to Petitioner's work sites during the Petitioner's exposure period from approximately 1963 through at least 1979. Consequently,

under Louisiana law, these Defendants are deemed to be "manufacturers" of the asbestos-containing products they sold and are strictly liable for the injury they caused to Petitioner.

30. The asbestos-containing products manufactured, distributed, and/or sold by these Defendants were unreasonably dangerous in normal use, were defective in design or composition, were dangerous per se and/or were dangerous because of a lack of a proper warning regarding their dangers. In addition, these Defendants made various representations and warranties regarding the safety, efficacy or desirability of using their asbestos-containing products. These Defendants are liable for breaching these warranties because, in fact, their asbestos-containing products are extremely dangerous and are not particularly useful due to the availability of asbestos-free substitute products. Further, these Defendants failed to properly warn the Petitioner of the dangers associated with the use of such products, including the risk of developing mesothelioma, cancer and other lung diseases.

31. These Defendants are strictly liable for manufacturing and selling dangerous and defective products. Alternatively, they are liable for their negligence in manufacturing and selling dangerous and defective asbestos-containing products and for failing to properly warn regarding their dangers.

32. As a result of the defective and unreasonably dangerous condition, design and composition of the asbestos-containing product manufactured, distributed and/or sold by these Defendants, the Petitioner, was exposed to and caused to inhale, during the Petitioner's exposure period from approximately 1963 through at least 1979 dangerous amounts of asbestos dust and fibers. As a direct result, he developed asbestosis and pleural plaques from which he currently suffers.

33. The aforementioned acts and omissions of the defendants, for which they are solidarily and jointly liable, under a strict liability or negligence standard, proximately caused the Petitioner's injuries, damages and losses.

## CAUSES OF ACTION AGAINST THE EMPLOYER, VESSEL OWNER, VESSEL OPERATOR and VESSEL CHARTER DEFENDANTS COUNT I JONES ACT CLAIM

34. Now comes Petitioner Arthur Price and hereby re-alleges and incorporates by reference all of the previous allegations set forth above and further states as against the EMPLOYER, VESSEL OWNER, VESSEL OPERATOR and VESSEL CHARTER DEFENDANTS as set forth under Paragraph 3 that:

35. As a direct and proximate result of the negligence under the Jones Act, 46 USCS. § 30104, Petitioner Arthur Price suffered from incurable cancer known as mesothelioma.

   a. To provide adequate warning to the crew, including Mr. Price, of the hazards of asbestos utilized and/or carried shipboard;

   b. To provide adequate training and supervision to the crew, including Mr. Price; in the use and/or cleanup of asbestos and asbestos-containing products;

   c. To provide adequate equipment for the protection of the crew, including Mr. Price, in the use of asbestos and/or asbestos-containing products; d. To establish, adopt and enforce an adequate safety plan for the crew, including Mr. Price, and/or a safe method of handling, removing, maintaining and installing asbestos and asbestos-containing materials; and

   e. To provide for the crew, including Mr. Price, a reasonably safe workplace.

36. As a direct and proximate result of the acts and omissions aforestated by each of the defending parties herein, Petitioner Arthur Price sustained injuries as an indivisible, cumulative cause of each of the stated Defendants as contemplated in American Fire & Casualty Company v. Flynn, 341 U.S. 6, 71 S. Ct. 534 (1951). Petitioner Arthur Price seeks damages as below stated, inter alia:

   a. Loss of earnings and earnings capacity;

   b. Conscious pain and suffering, past and future;

   c. Mental anguish, fright and shock, embarrassment, humiliation or mortification, past or future;

   d. Medical expenses and costs;

   e. Household services;

   f. Loss of pleasure, including social and recreational amenities, past and future;

   g.. Exemplary and punitive damages, and

   h. Any and all other elements of damages cognizable in law or which may be raised, pleaded and proved by the Petitioner during the pendency of this cuase and at the time of trial.

WHEREFORE, Petitioner demands judgment against Defendants, jointly and severally, in an amount exceeding the threshold jurisdictional requirement or otherwise in a figure in excess of One Hundred Thousand ($100,000.00) Dollars to be more particularly calculated and adjusted upwards during the pendency of this cause and Petitioner further seeks interest and costs to be taxed in accordance with law and such other and further measures of relief as the Court may determine to be appropriate and just in the premises.

## CAUSES OF ACTION AGAINST THE EMPLOYER, VESSEL OWNER, VESSEL OPERATOR and VESSEL CHARTER DEFENDANTS COUNT II

## UNSEAWORTHINESS UNDER GENERAL ADMIRALTY AND MARITIME LAW

37. Now comes Petitioner Arthur Price and hereby re-alleges and incorporates by reference all of the previous allegations set forth above and further states as against the EMPLOYER, VESSEL OWNER, VESSEL OPERATOR and VESSEL CHARTER DEFENDANTS as set forth under Paragraph 3 that:

38. As a direct and proximate result of the negligence of the unseaworthiness of the vessels, Petitioner Arthur Price suffers from incurable disease known as asbestois and pleural plaques which will progressively worsen and potentially turn into cancer.

39. The vessels owned and/or operated by EMPLOYER, VESSEL OWNER, VESSEL OPERATOR and VESSEL CHARTER DEFENDANTS were unseaworthy under the General Admiralty and Maritime Law in that their vessels presented an unreasonably unsafe working environment, whereby the EMPLOYER, VESSEL OWNER, VESSEL OPERATOR and VESSEL CHARTER DEFENDANTS substantially breached the implied warranty of providing a reasonably safe vessel and working conditions, which was to be reasonably fit for the purpose for which it was intended.

40. The vessels were unseaworthy in part due to their lack of necessary equipment to perform tasks in safety; their lack of warnings of the dangerous characteristics of asbestos and asbestos-containing products; their lack of a published, adopted and enforced safety plan for a safe or more safe method of handling, installing, maintaining and working with asbestos and asbestos-containing materials; the lack of adequate training and supervision in the use of a carcinogenic known as asbestos and the lack of adequate ventilation and personal protective measures to reduce the risk of injury to the crew.

41. Defendants knew for decades of the hazards of asbestos and asbestos-containing products, or in the exercise of reasonable care, should have known of these hazards. Notwithstanding this knowledge, Defendants failed to provide necessary equipment to perform tasks in safety; failed to provide adequate training in the use of asbestos and further failed to provide personal protective measures and devices in a willful and conscious disregard for the safety of the Petitioner Arthur Price and others, causing Mr. Price's exposure to asbestos and resulting mesothelioma thereby entitling him to an award of exemplary and punitive damages according to proof.

42. As a direct and proximate result of the acts and omissions aforestated by each of the defending parties herein, Petitioner Arthur Price sustained injuries as an indivisible, cumulative cause of each of the stated Defendants as contemplated in *American Fire & Casualty Company v. Flynn*, 341 U.S. 6, 71 S. Ct. 534 (1951). Petitioner Arthur Price seeks damages as below stated, inter alia:

   a. Loss of earnings and earnings capacity;

   b. Conscious pain and suffering, past and future;

   c. Mental anguish, fright and shock, embarrassment, humiliation or mortification, past or future;

   d. Medical expenses and costs;

   e. Household services;

   f. Loss of pleasure, including social and recreational amenities, past and future;

   g. Exemplary and punitive damages; and

   h. Any and all other elements of damages cognizable in law or which may be raised, pleaded and proved by the Petitioner during the pendency of this cause and at the time of trial.

WHEREFORE, Petitioner demands judgment against Defendants, jointly and severally, in an amount exceeding the threshold jurisdictional requirement or otherwise in a figure in excess of One Hundred Thousand ($100,000.00) Dollars to be more particularly calculated and adjusted upwards during the pendency of this cause and Petitioner further seeks interest and costs to be taxed in accordance with law and such other and further measures of relief as the Court may determine to be appropriate and just in the premises.

## STRICT LIABILITY AND NEGLIGENCE ACTION AGAINST THE PREMISES OWNERS

43. In the alternative, Petitioner further alleges strict premise liability and negligence of defendants DIAMOND OFFSHORE DRILLING, INC. SHELL OIL COMPANY and MURPHY OIL, USA, INC., ENTERGY NEW ORLEANS, LLC and HRG GROUP in failing to provide Petitioner a safe place in which to work free from the hazards of asbestos.

44. The premises in which a substantial portion of Petitioner's exposure to asbestos occurred or originated were owned by and in the custody of the Premises Defendants and were unreasonably dangerous due to the presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk. This unreasonably dangerous condition was a direct and proximate cause of Petitioner's injuries set forth herein.

45. The Premises Defendants negligently, recklessly, willfully and/or because of gross and wanton negligence, fault, or strict liability, failed to properly discharge its duties to Petitioner in the following particulars:

   a. Failure failed to provide the Petitioner with a safe work place;

   b. failed to provide the Petitioner with respirators which, when worn, would prevent or reduce his inhalation of dangerous levels of asbestos dust and fibers;

   c. failed to provide the Petitioner with correct, adequate, or proper safety equipment;

   d. They failed to ensure that the Plant had adequate ventilation equipment and systems to eliminate and/or reduce Petitioner's exposure to asbestos dust and fibers;

   e. They failed to ensure that adequate engineering and administrative controls were implemented to eliminate and/or reduce Petitioner's exposure to asbestos dust and fibers;

   f. They failed to ensure that adequate air monitoring or dust sampling was done to detect dangerous levels of asbestos in the air;

   g. recklessly and negligently failed to disclose, warn or reveal critical medical and safety information to the Petitioner regarding asbestos hazards in general and with regard to those specific hazards at the Petitioner's worksite;

h. recklessly concealed and negligently omitted to reveal critical medical and safety information from the Petitioner regarding the safety and health risks associated with the asbestos and asbestos-containing products at his worksites;

i. failed to timely remove asbestos hazards from the work place;

j. They failed to ensure that work activities involving the handling or use of asbestos were isolated from the employees, including Petitioner, by cordoning off, and restricting access to, those work areas;

k. They failed to implement measures, such as the wet-down of asbestos, to reduce dust levels;

l. They failed to ensure that asbestos-free insulation and building products were used instead of asbestos-containing materials;

m. They failed to ensure that asbestos materials were encapsulated or maintained in such a condition that the asbestos was not friable;

n. failed to properly supervise or monitor the work areas for compliance with safety regulations; and o. failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

46. During the course of Petitioner's work at the Premises Defendant's facilities the asbestos or asbestos-containing products to which contributed to Petitioner's exposure were within the care, custody, and control of the Premises Defendants, and the longstanding use and presence of asbestos at the Premise Defendant's jobsites caused that asbestos to be incorporated into the premises and resulted in it becoming a permanent fixture therein. Therefore, the Premises Defendant's are strictly liable for Petitioner's injuries pursuant to Louisiana Civil Code Articles 660, et seq. and 2317.

47. The above-described negligence, fault, strict liability and willful misconduct of the Premises Defendants were each a proximate cause of Petitioner's injuries.

WHEREFORE, on the basis of all of the foregoing premises set out in paragraphs 1 through 47 Petitioner requests that defendants be served with this petition and that there be judgment against these defendants jointly, severally and in solido in a sum sufficient to compensate Petitioner for the following:

a. all past, present and future medical costs or expenses related thereto;

b. all past, present and future lost earnings;

c. all past, present and future mental suffering, anguish, pain and suffering;

d. all past, present and future physical pain and suffering;

e. loss of quality of life; and

f. Past, present, and future disability.

WHEREFORE Petitioner prays that after due proceedings had, there be judgment herein in favor of Petitioner and against the defendants as prayed for.

Respectfully submitted,
**BOLING LAW FIRM, LLC**

_____
Jeremiah Boling (Bar No. 34249)
Caroline Boling (Bar No. 34494)
541 Julia Street, Suite 300
New Orleans, LA 70130
Telephone: (504) 615-6309
Fax: (504) 369-3421
jboling@bolingfirm.com
cboling@bolingfirm.com
**ATTORNEYS FOR PETITIONERS**

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFF'S PETITION FOR DAMAGES:**

**SHELL OIL COMPANY**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**TAYLOR SEIDENBACH, INC.**
Through its agent for service:
Hal Shepard
731 South Scott St.
New Orleans, LA 70119

**DIAMOND OFFSHORE DRILLING, INC.**
Pursuant to the Louisiana Long Arm Statute:
15415 Katy Freeway,
Suite 100
Houston, TX 77094

**EAGLE, INC.**
(f/k/a Eagle Asbestos & Packing Co., Inc.)
Through its agent for service:
Susan B. Kohn
Simon, Peragine, Smith & Redfearn
Energy Center - 30th Floor
1100 Poydras Street
New Orleans, LA 70163-3000

**HRG GROUP**
Pursuant to the Louisiana Long Arm Statute:
450 Park Avenue
29th Floor
New York, NY 10022

**UNION CARBIDE CORPORATION**
Through its agent for service:
C.T. Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**CHEVRON PHILLIPS CHEMICAL COMPANY LP**
Through its agent for service:
C.T. Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**MURPHY OIL USA, INC.**
Through its agent for service:
C.T. Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**MONTELLO, INC.**
Through its agent for service:
The Prentice-Hall Corporation System, Inc.
501 Louisiana Avenue
Baton Rouge, LA 70802

**RUST ENGINEERING & CONSTRUCTION, INC.**
Pursuant to the Louisiana Long Arm Statute:
1001 Fannin
Suite 4000
Houston, TX 77002

**SENTRY INSURANCE COMPANY**
Through its agent for service:
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

**ENTERGY NEW ORLEANS, LLC**
Through its agent for service:
John A. Braymer
639 Loyola Avenue, 26th Floor
New Orleans, LA 70113

**Foster Wheeler Energy Corporation**
Through its agent for service:
United Agent Group, Inc.
1070-B West Causeway Approach
Mandeville, LA 70471

**PLEASE HOLD SERVICE ON THE BELOW DEFENDANT:**

**UNIROYAL INC.**